Marcell T. Hendrix
Name and Prisoner/Booking Number

California Health Care Facility
Place of Confinement

7707 S. Austin Road
Mailing Address

Stockton, Ca. 95213
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

**FILED**
Jul 26, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Marcell T. Hendrix,
(Full Name of Plaintiff)
            Plaintiff,

v.

(1) CALIFORNIA DEPT. OF CORR. & REHAB
(Full Name of Defendant)
(2) HENSEL PHELPS CONST
(3) DOES 1 through 50
(4) _____
            Defendant(s).
☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 2:22-cv-1319 CKD (PC)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT BY A PRISONER**

☑ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

Jury Trial Demanded

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: AMERICANS with DISABILITY ACT (ADA) and the REHABILITATION ACT SECTION 504

2. Institution/city where violation occurred: California Health Care Facility

## B. DEFENDANTS

1. Name of first Defendant: __CDCR__. The first Defendant is employed as: __California State Agency__ (Position and Title) at __California Health Care Facility__ (Institution).

2. Name of second Defendant: __Hensel Phelps Const.__. The second Defendant is employed as: _____ (Position and Title) at _____ (Institution).

3. Name of third Defendant: __Does 1 though 50__. The third Defendant is employed as: __Contracting Construction Company__ (Position and Title) at __Greely, California / CHCF__ (Institution).

4. Name of fourth Defendant: _____. The fourth Defendant is employed as: _____ (Position and Title) at _____ (Institution).

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?  ☐ Yes  ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: __N/A__ v. __N/A__
      2. Court and case number: __N/A__
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __N/A__

   b. Second prior lawsuit:
      1. Parties: __N/A__ v. __N/A__
      2. Court and case number: __N/A__
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __N/A__

   c. Third prior lawsuit:
      1. Parties: __N/A__ v. __N/A__
      2. Court and case number: __N/A__
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __N/A__

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

## CLAIM I

1. State the constitutional or other federal civil right that was violated: **AMERICANS with DISABILITY ACT (ADA) and the REHABILITATION ACT, SECTION 504**.

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1) On August 1, 2021, during the 3rd watch, in housing unit E1E, inmate/patient sustains injury while attempting to ascend to the upper bunk from the ground floor using the desk in cell #119 circa 2000 and 2030 hours. 2) Plaintiff loses his balance during the difficult ascent falling backwards back down to the ground floor / striking the desk injuring his hand and other parts of his body as recorded in the CDC Form 7219 prepared by medical personnel responding to the incident. 3) Plaintiff understands that the California Department of Corrections & Rehabilitation ("CDCR") contracts with the HENSEL PHELPS CONSTRUCTION COMPANY, circa 2010, to build the California Health Care Facility ("CHCF") a project completed in 2013. 4) Plaintiff asserts that pressure from the federal court causes the CDCR to build CHCF specifically to address the poor Medical/Mental Health treatment available to CDCR's inmate/patient. 5) The nature of the building project entails Americans with Disability Act (ADA) and the Rehabilitation Act, Section 504 provisions required to ensure Plaintiff's safety at the CHCF Medical and Mental Health institution. 6) The construction of an upper bunk is a direct and proximate cause of injury sustained by Plaintiff. 7) Defendant's knowing and intentional addition of an upper bunk violates ADA provisions. (See Exhibit A)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   Plaintiff sustains injury as a direct and proximate cause of Defendants CDCR and Hensel Phelps Construction Company building upper bunks contrary to ADA provisions.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim I? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

3

## CLAIM II

1. State the constitutional or other federal civil right that was violated: **AMERICANS with DISABILITY ACT (ADA) and the REHABILITATION ACT, SECTION 504**

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   1) On August 15, 2021, during the 2nd watch/3rd watch shift change, Plaintiff injures his finger while attempting to close the door to his assigned cell in housing unit EIF-#222 Low. 2) Because of the construction of the cell door which has no indentation or handle inside of the cell door, Plaintiff has to reach outside of the cell and build up enough momentum to swing the door shut, while hoping to remove his arm and hand quick enough so as not to be caught and injured, between the closing door and the door jamb to the cell, a maneuver of chance of incurring injury with every attempt. 3) Plaintiff understands that the California Department of Corrections & Rehabilitation ("CDCR"), contracts with the HEMSEL PHELPS CONSTRUCTION COMPANY circa 2010 to build the California Health Care Facility, ("CHCF"), a project that was completed in 2013. 4) Plaintiff asserts that it was pressure from the Federal Court that causes the CDCR to build CHCF specifically to address the poor medical/mental health treatment afforded to the CDCR's inmate/patient population along with over-crowding. 5) The nature of the building project entails AMERICANS with DISABILITY ACT (ADA) and the REHABILITATION ACT, SECTION 504 provisions. 6) Defendant's knowing and intentional omission of safeguards ADA provisions require, to ensure Plaintiff's safety at the CHCF medical/mental health institution is the proximate cause of the injury he sustains on August 15, 2022 (see Exhibit A)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   Plaintiff is injured when he has to reach outside of his cell door in order to close the door while attempting remove his arm and hand from out of the arc/momentum of the closing door. The maneuver fails injuring Plaintiff

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim II? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

## E. REQUEST FOR RELIEF

State the relief you are seeking:

1) Plaintiff requests remedial plan to correct the construction and design hazard that causes his and similarly situated ADA inmate/patients injury, to put handles on the inside of doors throughout the CHCF institution
2) Granting Plaintiff Compensatory damages in the amount of $50,000.00 dollars against each Defendant jointly and severally.
3) Granting Plaintiff punitive damages in the amount of $50,000.00 against each Defendant jointly and severally.

Jury Trial Demanded

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  7-26-22
DATE

SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

# EXHIBIT COVER PAGE:

Exhibit: __A__

Description of this exhibit: Article California Lifer Newsletter #36 CHCF GROUND BREAKING page 11 continued on page 16

Number of pages of this exhibit: __2__ pages

JURISDICTION: (Check only one)

____ Municipal Court

____ Superior Court

____ Appellate Court

____ State Supreme Court

__✓__ United States District Court

____ United States Circuit Court

____ United States Supreme Court

____ California Department of Corrections, 602 Exhibit.

____ Other: _____

## Of Interest to Lifers and Others

### LIFER PAROLES QUASHED BY CELL PHONE BEEFS

Last week we learned of another lifer, this one at Soledad, who was busted for possession of a bought-from-a-guard cell phone – just one week from winning his federal habeas petition. We reported his case in the last issue (*CLN* # 35), but the result of his new, court-ordered parole hearing, may be foreclosed if the Panel recites that his wireless possession is new evidence that makes him an unreasonable danger to society.

This is the *fourth* instance, including two cases I personally worked on to get a court order for release or a new hearing, in which the goal for which a lifer – and we – have worked for up to decades to gain, has been jeopardized or lost. While the cops bring these devices into the prisons in droves to derive personal profit from a temptation that they know many inmates can't resist, lifers must do so to keep their chances of parole alive. Sadly, for every guard that gets busted, probably as many as 500 115s are written – the sheer cost of which methinks should motivate the state to clamp down, even in the face of the CCPOA's (Guard's Union) political power. But, read on ...

### DEPARTMENT PROFITS FROM ITS GUARDS' ILLEGAL IMPORTATION SALES OF CELL PHONES TO INMATES

Last month the Department deceitfully received undeserved commendations for "donating" more than 1,000 cell phones (and chargers, batteries, etc.) to victims' charities. The only "victims" involved in this fiasco are the Department's inmates.

CDCR Secretary Matthew Cate initiated the project in which the donated phones will be converted to allow potential victims of domestic violence to phone 911 – a benefit that could be accomplished at considerably less expense to the taxpayer (see above).

Cate told reporters that "CDCR is working with all institutions to expand the donation project statewide." Allowing its guards to bring cell phones into the prisons and sell them to inmates illegally, then busting the inmates and collecting these same phones, incurs the cost of prolonging prison terms at $35,000/year/inmate, or about $35 million annually, plus another million or so for processing the disciplinary violations.

CDCR prison staff have confiscated approximately 8,000 cell phones in less than three years. Cate reports, "CDCR officials are pleased the donation project presents a viable solution beyond simply contributing to a landfill."

### GOOD AND TRAGIC NEWS ON LIFERS

Each month we happily report the release of more and more lifers (two more, in cases I've had the pleasure of working on). And it was good to visit with Ron Hayward last week. Following the Ninth Circuit's en banc *Hayward v. Marshall* decision a year ago, which returned Ron to prison, the Governor passed on a subsequent parole grant by the Board. It would have been difficult even for Staffernators (Governator's staff), to do otherwise, as Ron had been a model citizen while free in the community for about two years during the *Hayward* proceedings.

Not all the news on ex-lifers is good, however. About 10 days ago Michael Slater, whose release from prison and discharge from parole we helped secure less than a year ago, and who was in great spirits at the Lifer Seminar, suffered what may be a fatal injury when he was ejected from his car when it overturned in Las Vegas. Michael suffered severe head trauma and remains unconscious.

His family seeks your prayers.

### NEW CDCR REGULATIONS RELATED TO LOCKDOWNS (#)

On November 26th the Department announced a proposal to modify the definitions of lockdowns with modified programs, and related regulations. The proposed new rules affect, among other things, access to law libraries, mail delivery, counts, movement, meals, and program suspensions.

### CHCF GROUNDBREAKING

Last month CDCR broke ground for its new prison, the California Health Care Facility, just southwest of Stockton. While the Department crowed about the project, it was in fact ordered by the federal district court to help improve the pathetic medical care provided by the Department to its inmates. The Department announced, *inter alia*:

* A massive state prison project southeast of Stockton that will pump millions of dollars into the local economy for years to come.

* One of the largest and most expensive state prison projects ... Estimated to cost $906 million, it will be paid for by a $7.7 billion prison construction bill Gov. Arnold Schwarzenegger signed in 2007.

* It will house 1,722 mentally and physically ill state prisoners once it opens in 2013.

* The 1.2 million square-foot prison will put to work 2,400 doctors, nurses and correctional staffers with an annual payroll of $220 million.

* Actual building costs are estimated to be $738 million, but the expected return to the local community could be as high as $1 billion. Stockton Mayor Ann Johnston -- once an outspoken critic of the state's plan -- welcomed it as a "boon." "This is huge for our county, our community," she said, also urging the assembled state officials to stay and spend their money on Stockton restaurants and shops.

(Continued on page 16)

Of Interest (from page 11)

CHCF (cont'd)

• The medical center is one of three local prison projects planned for the same swath of land near the Highway 99 and Arch Road intersection. *It lies just north of the Forward Landfill, one of the state's largest dumps.*

• Plans are under way to convert DeWitt Nelson Youth Correctional Facility into a 1,133-bed prison medical center. The former Northern California Women's Facility will be turned into a 500-bed re-entry facility for male prisoners about to leave prison.

• Federal judges have pressured the state to improve medical care and fix overcrowding -- two intertwined problems facing California. The state houses 164,678 adult prisoners.

• Demolition and construction are expected to begin in earnest in spring 2011. Work will be complete in fall 2013 with inmates transferred by the end of that year, officials said.

## CDCR PUBLISHES ANNUAL RECIDIVISM REPORT

### 2010 Adult Institutions Outcome Evaluation Report (#)

Last month the Department published a comprehensive (60-page) report covering a variety of data allegedly addressing recidivism. In issuing its report, the Department gobbeldygooked: "We are holding ourselves accountable for data-driven policies informed by the latest research in what works in corrections and rehabilitation ... This report is a tangible result of our commitment to transparency and accountability." [The Department long ago achieved its goal of "transparency."]

John and I view this as a sleight of hand report. It shows that recidivism within 3 years remains at 67.5 percent, driven most strongly by technical parole violations. In other words, "bed vacancy recidivism" remains the operative driving force to maintain job security by keeping the prisons full. It buries the lifer low-rate numbers (under 10%) because of small numbers (craftily defined as "fewer than 30%, in order to not have to calculate rates for the 29 2nd degree murderers released in 2005-2006!).

John's Page (from page 12)

Two caveats must be emphasized here. First, any attempt to use a writ of *mandate* to either (1) promote your own release, or (2) foreshorten your prison stay, *must be rejected* by a court, because such a remedy (i.e., liberty) is the sole province of the writ of *habeas corpus*. Second, properly framing a mandate petition for these issues is best left to an attorney; the sad reality of pro per litigators is that their inartful presentations of complex legal questions (*mandamus* litigation is much trickier than *habeas corpus*) can easily lead to making bad case law.

The Board has appealed the recent rulings of the Santa Clara County Superior Court to the Sixth Appellate District, the same court that recently held in *In re Macias* (2010) 189 Cal. App.4th 1326 that the Board must articulate objective meanings to its vague terms such as "lack of full insight." Hopefully, the Sixth District will go further, in the new round of appeals, and disapprove some of the Board's outdated regulations. In the meanwhile, mandate petitions could be brought against the Board to force the issue.

---

**WE BUY STAMPS**

*CLN* will pay up to 65% of face value for unused postage stamps. We will promptly send a money order to your trust account or to any person, bank or company you designate, wire funds, or order a package. Please see the ad on page 33.

CLN
P.O. BOX 687
Walnut, CA 91788

---

BPH News (from page 8)

*Lifer Witnesses* (cont'd)

"victim" does not include a person in custody for an offense, the accused, or a pers whom the court finds would not act in the best interests a minor victim.

Subsection 28(b) of Article 1, provides, in pertinent part:

**(b)** In order to preserve and protect a victim's rights to ju tice and due process, a victi shall be entitled to the follo ing rights:

. . . .

(8) To be heard, upon reques at any proceeding, including any delinquency proceeding involving a post-arrest relea decision, plea, sentencing, post-conviction release decision, or any proceeding in which a right of the victim i issue.

. . .

(15) To be informed of all pa role procedures, to participa in the parole process, to pro vide information to the paro authority to be considered b fore the parole of the offend and to be notified, upon request, of the parole or other release of the offender.

. . . .

(17) To be informed of the rights enumerated in paragraphs (1) through (16).

We have suggested that a lifer's relatives who suffered emotionall physically, or financially as a res the lifer's offense, state so in a fo letter to the Board asking to regis as victims, to be notified by the B when a hearing is scheduled, and appear to speak at the hearing. lifers have reported that these re quests are being rejected by the Board, in clear violation of the ne law.

(Continued on page 2(